**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**DeSANTO ROLLINS**                                                    **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO.** 3:23-CV-356-GHD-RP

**LANE KIFFIN, in his individual capacity and in
his official capacity as the Head Football Coach
for the University of Mississippi; UNIVERSITY
OF MISSISSIPPI; and JOHN DOES 1-10**                  **DEFENDANTS**

**JURY DEMANDED
COMPLAINT
JURISDICTION AND VENUE**

1.    Plaintiff, DeSanto Rollins, brings this action for declaratory and equitable relief, compensatory damages, punitive damages, and an award of court costs including attorney fees against the defendants, Lane Kiffin, in his individual capacity and in his official capacity as the Head Football Coach for the University of Mississippi, the University of Mississippi, and John Does 1-10, pursuant to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States of America, 28 U. S. C. §§ 2201 and 2202 (the Declaratory Judgment Act), 42 U. S. C. § 2000d, *et seq.* (Title VI of the Civil Rights Act of 1964), 20 U. S. C. § 1681 (Title IX of the Education Amendments of 1972); 29 U. S. C. § 794 ( § 504 of the Rehabilitation Act of 1973), 42 U. S. C. §§ 12102 and 12132 (the Americans with Disability Act of 1990), 42 U. S. C. §§ 1983 and 1988, Fed. R. Civ. P. 65, and the common law of the State of Mississippi.

2.    The jurisdiction of this Court is invoked pursuant to the Fourteenth Amendment to

the Constitution of the United States of America, 28 U. S. C. § § 1331, 1343, 2201, and 2202, and 42 U. S. C. §§ 1367 and 1983. The Court has supplemental jurisdiction of plaintiff's state law claims because they are so related to the claims for which the Court has original jurisdiction.

3. This Court has venue of this action pursuant to 28 U. S. C. § 1391 because the cause of action arose and accrued in Lafayette County, Mississippi.

## PARTIES

4. Plaintiff, DeSanto Rollins, hereinafter referred to as "Rollins", is an adult African-American male citizen of the United States of America and resident citizen of Wilkinson County, Mississippi, whose post office and street address is Woodville, Mississippi.

5. Defendant, Lane Kiffin, hereinafter referred to as "Kiffin", is an adult white male citizen of Lafayette County, Mississippi whose post office and street address is Oxford, Mississippi. This defendant may be served with the process of this Court by serving him at his place of employment, University of Mississippi Department of Athletics, Oxford, Mississippi 38677. This defendant is sued in his individual capacity and in his official capacity as the Head Football Coach for the University of Mississippi.

6. Defendant, the University of Mississippi, hereinafter referred to as "the UM", is a public institution of higher learning created, operating, and existing under the laws of the State of Mississippi. This defendant may be served with the process of this Court by serving its chief executive officer, Chancellor Glenn Boyce, whose post office and street address is University of Mississippi, 123 Lyceum, University, Mississippi 38677 and by serving the Attorney General of the State of Mississippi, Honorable Lynn Fitch, whose post office and street address is 550 High Street, Jackson, Mississippi 39201

2

7.     The plaintiff does not know the names of other defendants, and he designates the unknown parties as John Does 1-10.  When their true names are discovered the process and all pleadings and proceedings in the action will be amended by substituting the true names and giving proper notice to these defendants.

## FACTS

8     At all times relevant herein, the UM  received federal financial assistance for programs and activities.

9     At all times relevant herein, Kiffin was an employee and the Head Football Coach for the UM, who was acting in his individual capacity and within the course and scope of his employment for the UM.

10.     The UM is a member university of the National Collegiate Athletic Association hereinafter referred to as "the NCAA", "a voluntary, self-governing organization of four year colleges, universities, and conferences committed to the well-being and development of student-athletes, to sound academic standards, and the academic success of student-athletes, and to diversity, equity and inclusion." [NCAA Preamble].

11.     The NCAA principles provide, *inter alia*, that member institutions of higher learning shall conduct intercollegiate athletic programs "in a manner designed to protect, support and enhance the physical and mental health and safety of student athletes." [NCAA Principle D].

12.     In 2014, the NCAA published a manual entitled "Mind, Body and Sport Understanding and Supporting Student-Athlete Mental Wellness" which informed NCAA members

about the need to address mental health issues in student-athletes.

13.    The NCAA then published another manual in 2013-2014 entitled "Inter-Association Consensus Document: Best Practices for Understanding and Supporting Student-Athlete Mental Wellness" ("Best Practices") which was a practical extension of the NCAA manual "Mind, Body and Sport Understanding and Supporting Student-Athlete Mental Wellness."

14.    Best Practices was "designed to provide athletics and sports medicine departments - regardless of size and resources - with recommendations for supporting and promoting student-athlete mental health." [Best Practices Purpose].

15.    Best Practices required NCAA member institutions to have "written institutional procedures for...routine mental health referral[s]." [Best Practices Procedures for Identification and Referral of Student-Athletes to Qualified Practitioners].

16.    At all times relevant herein, the UM did not have written institutional procedures for routine mental health referrals.

17.    The UM breached the duty it owed to Rollins to have written institutional procedures for routine mental health referrals.

18.    At all times relevant herein, neither Kiffin, the football coaching staff, nor football trainers were aware of written institutional procedures UM had regarding the referral of student-athletes with non-emergency mental health concerns.

19.    The UM breached the duty it owed to Rollins to have written institutional procedures for the referral of student-athletes with non-emergency mental health concerns.

4

20.     At all times relevant herein, neither Kiffin, the football coaching staff, nor football trainers were provided with role-appropriate training about the signs and symptoms of mental health disorders and the behaviors of student-athletes to monitor that may reflect psychological concerns.

21.     The UM breached the duty it owed to Rollins to provide its football coaching staff and football trainers with role-appropriate training about the signs and symptoms of mental health disorders and the behaviors of student-athletes to monitor that may reflect psychological concerns.

22.     In January, 2019, the five (5) autonomy conferences of the NCAA, including the Southeast Conference, hereinafter referred to as "the SEC"),  made a rule change that went into effect on August 1, 2019 that required the UM to distribute to student-athletes mental health educational materials and resources.

23.     Rollins received a football scholarship from the UM, enrolled in the school, and began playing football on June 14, 2020.

24.     Rollins has been a member of the UM football team since June 14, 2020, and he is currently a senior.

25.     Rollins has been a scholar-athlete since his enrollment at the UM.

26.     The UM breached the duty it owed to Rollins to provide him with mental health educational materials.

27.     On April 23, 2022, Rollins suffered a concussion injury that affected his ability to concentrate, think, and remember while during the UM Spring game, and the UM football coaching staff, football trainers, and team physicians did not refer him for a mental health evaluation.

28.     In late July, 2022, Rollins injured his Achilles tendon in his right foot during Summer workouts.

29.     The physical injury to his Achilles tendon in his right foot substantially limited Rollins' ability to perform  major life activities of walking, jumping, standing for long periods of time, standing on his toes,  climbing, and sleeping.

30.     As a result of the injury to his right Achilles tendon, Rollins suffered severe depression, anxiety, frustration, embarrassment, humiliation, a loss of sleep, and loss of appetite that substantially limited  his ability to perform major life activities of walking, jumping, standing for long periods of time, standing on his toes,  climbing, eating, and sleeping.

31.     Rollins was unaware of a need for a mental health evaluation or a mental health referral when he suffered severe depression, anxiety, frustration,  embarrassment, humiliation, a loss of sleep, and loss of appetite because he had not been provided any mental health educational materials by the football coaching staff, football trainers, Athletic Department, or university.

32.     The football coaching staff, nutritionist, and football trainers knew, or should have known, that Rollins suffered severe depression, anxiety, frustration,  embarrassment, humiliation, a loss of sleep, and loss of appetite after his July 2022 injury that substantially limited his ability to perform major life activities of walking, jumping, standing for long periods of time, standing on his toes,  climbing, eating, and sleeping.

33.     The football coaching staff, nutritionist, Athletic Department personnel, and football trainers failed to provide  Rollins with materials about mental health or a mental health referral after his July 2022 injury.

6

34.     On August 8, 2022, Austin Thomas, the Director of Football Operations for the UM, reinstated Rollins to football practice.

35.     On August 10, 2022, Rollins returned to football practice for the UM.

36.     In late August 2022, Rollins aggravated his lateral collateral ligament ("LCL") injury in his left knee during defensive line drills football practice.

37.     In 2020, Rollins initially suffered a LCL tear in his left knee during one-on-one football practice.

38.     The August 2022 physical injury to his LCL in his left knee substantially limited Rollins' ability to perform major life activities of walking, jumping, climbing, standing for long periods of time, standing on his toes, eating, and sleeping.

39.     As a result of the August 2022 injury to his left knee, Rollins suffered severe depression, anxiety, frustration, embarrassment, humiliation, a loss of sleep, and a loss of appetite that substantially limited his ability to perform major life activities of walking, jumping, standing for long periods of time, standing on his toes, climbing, eating, and sleeping.

40.     Although Rollins' ability to perform his major life activities after the August 2022 aggravation of the LCL injury to his left knee, Kiffin and the football coaching staff forced him to participate in football practice.

41.     A September 1, 2022 MRI result revealed that there was scar tissue where Rollins had re-injured the LCL in his left knee.

42.     Rollins suffered severe depression, anxiety, frustration, loss of sleep, embarrassment,

7

humiliation, and a loss of appetite after .

43.     After Rollins re-injured the LCL in his left knee in August 2022, he started to feel worthless, experienced sadness, embarrassment, humiliation, a loss of appetite, and a loss of sleep.

44.     Rollins suffered physical pain from the time he aggravated the LCL in his left knee until December 2022 when Dr. Luber, the Orthopaedic Surgeon and Sports Medicine Specialist for the UM athletic teams, gave him a cortisone shot.

45.     Rollins was unaware of a need for a mental health evaluation or referral when he suffered severe depression, anxiety, frustration, embarrassment, humiliation, loss of sleep. and loss of appetite after his August 2022 injury because he had not been provided any mental health educational materials by the football coaching staff, football trainers, Athletic Department, or university.

46.     The football coaching staff, nutritionist, and football trainers knew, or should have known, that Rollins suffered severe depression, anxiety, frustration, feeling of worthlessness, sadness, embarrassment, humiliation, loss of sleep, and loss of appetite after his August 2022 injury.

47.     The football coaching staff, nutritionist, and football trainers failed to refer Rollins for a mental health evaluation and/or treatment after he suffered severe depression, anxiety, frustration, feeling of worthlessness, sadness, embarrassment, humiliation, loss of sleep, and loss of appetite following his August 2022 injury.

48.     On November 28, 2022, Rollins had an exit meeting with Randall Joyner, hereinafter referred to as Joyner, the Defensive Line Coach for the UM, who, at all times referred to herein, was

8

acting within the course and scope of his employment for the UM.

49.     Joyner pressured Rollins to get into the transfer portal and transfer to another institution of higher learning.

50.     Joyner informed Rollins that if he waited until the Spring to transfer, he would not have time to look elsewhere.

51.     Joyner also told Rollins that he should definitely look for other places to go.

52.     Joyner told Rollins that he was a guy who did everything right, but it would be hard for him to play at the UM because of how the place was "wired."

53.     Joyner told Rollins that if he stayed at Ole Miss he would "just be here".

54.     Rollins asked Joyner how he could make that assessment without even giving him a chance to play.

55.     Rollins informed Joyner that he felt useless, undervalued, humiliated, embarrassed, and unworthy.

56.     As a result of the meeting with Joyner, Rollins suffered severe depression, anxiety, frustration, embarrassment, humiliation, feeling of worthlessness, sadness, loss of sleep, and loss of appetite.

57.     Joyner knew, or should have known, that Rollins suffered severe depression, anxiety, frustration, embarrassment, humiliation, feeling of worthlessness, sadness, loss of sleep, and loss of appetite.

58. Joyner failed to provide Rollins with a mental health referral after their meeting.

59. Rollins' maternal grandmother died on January 6, 2023.

60. Rollins and his grandmother were very close.

61. Rollins was with his grandmother when she drew her last breath.

62. Rollins continued to suffer severe depression, anxiety, frustration, embarrassment, humiliation, feeling of worthlessness, sadness, loss of sleep, and loss of appetite after his maternal grandmother died.

63. On February 27, 2023, Joyner informed Rollins that Kiffin wanted to meet with him.

64. Rollins met with Kiffin on February 27, 2023, and Kiffin told him that he was being moved from his defensive tackle position to the scout team on the offensive line because he would not enter the transfer portal and transfer from the UM.

65. Rollins asked Kiffin if his re-assignment was a choice or a command.

66. Kiffin yelled at Rollins in a hostile and verbally threatening tone telling him that he was the coach and Rollins was the player, and if he didn't like it then he should quit.

67. Rollins told Kiffin that he felt worthless within the football program, and he never felt a sense of belonging since he had been at the UM.

68. Kiffin continued yelling at Rollins in a hostile and verbally threatening tone stating "other coaches were too nice" during his exit meeting.

69. Kiffin yelled at Rollins in a hostile and verbally threatening tone telling him that he

(Kiffin) was done talking, and he (Rollins) could quit if he did not like the position change.

70.     Kiffin continued to yell at Rollins in a hostile and verbally threatening tone  until he *Rollins) told him (Kiffin) that he was going to take a mental health break because of the verbal abuse from Kiffin and the mental anxiety, depression, and worthlessness he was feeling.

71.     Kiffin ignored Rollins' statement that he was going to take a mental health break, and he (Kiffin) continued to yell at him (Rollins) in a hostile and verbally threatening tone.

72.     Rollins left Kiffin's office and went to his car and immediately contacted strength and conditioning coach Nick Savage, hereinafter referred to as "Savage", and his mother and reiterated his need to take a mental health break.

73.     Rollins' mother then contacted UM Athletic Trainer Pat Jernigan, hereinafter referred to as "Jernigan", who, at all times mentioned herein, was acting within the course and scope of his employment for the UM, and she told him that Rollins was suffering a mental health crisis.

74.     Rollins' mother told Jernigan that he was suffering anxiety, depression, and bouts of crying, and she requested that Jernigan get a counselor to speak with him and monitor him.

75.     Rollins felt even more humiliated, embarrassed, undervalued, and unworthy, and he continued to suffer anxiety, panic attacks, a loss of appetite, face breaking out in hives, and sleepless nights after his February 27, 2023 meeting with Kiffin to the extent that he (Rollins) to the extent that  his ability to perform major life activities of walking, jumping, standing for long periods of time, standing on his toes,  climbing, eating, and sleeping was  substantially limited.

76.     Kiffin, the football coaching staff, and the football trainer staff  knew, or should have

11

known, that Rollins suffered emotional and mental issues that substantially limited his ability to perform major life activities.

77.     Jernigan scheduled a meeting for Rollins with Josie Nicholson, Ph.D., CMPC, the Assistant Athletic Director for Sport Psychology for the UM, hereinafter referred to as "Nicholson", for February 28, 2023.

78.     Nicholson, as the Assistant Athletic Director for Sports Psychology for the UM, was Kiffin's supervisor.

79.     Rollins met with Nicholson on February 28, 2023, and he told her about the mental issues he was suffering and Kiffin's harassing and disparaging treatment of him.

80.     Nicholson encouraged Rollins to talk to Jernigan about taking a step back from football in order to take care of his mental health, and she scheduled a follow-up session with him for March 7, 2023.

81.     On March 1, 2023, Joyner notified Rollins that Kiffin wanted to meet with him (Rollins) again.

82.     On March 7, 2023, Rollins went to his follow-up session with Nicholson, and he was informed that Kiffin wanted a follow-up meeting with him (Rollins), but Rollins did not want to meet with him yet because he was not in a good place.

83.     The football coaching staff and training staff continued to contact Rollins about having a follow-up meeting with Kiffin.

84.     Rollins had the follow-up meeting with Kiffin on March 21, 2021.

85.     Kiffin maliciously, deliberately, intentionally, and in blatant disregard for the rights and health of Rollins verbally assaulted him during the March 21, 2023 meeting knowing that Rollins was suffering mental and emotional anxiety, distress, and depression as evidenced by the following exchange:

**Kiffin: Did you call this meeting?**

Rollins: You said did I call it?

**Kiffin: Yeah.**

Rollins: Uh, no.

**Kiffin: OK, so what are you doing? you just, after two weeks of not showing up. What's going on? You came to say you're quitting?**

Rollins: What do you mean two weeks of not showing up?

**Kiffin: You haven't been here for two weeks.**

Rollins: I told Coach Savage I was going to take a mental break.

**Kiffin: OK, you have a f***ing head coach, this is a job, guess what, if I have mental issues and I'm not diminishing them, I can't not see my f***ing boss, when you were told again and again the head coach needs to see you, wasn't to make you practice, wasn't to play a position you don't f***ing want to, ok, it was to talk to you and explain to you in the real world, ok, so I don't give a f*** what your mom says, ok, or what you think in the real f***ing world you show up to work, and then you say hey I have mental issues, ok, I can't do anything for two weeks, but if you change my position I won't have mental issues, I guarantee if we f***ing called you in and said you're playing defense, would you have mental issues?**

Rollins: Definitely would.

**Kiffin: No, would you have been at practice? Would you have skipped two weeks of workouts?**

13

Rollins: Why are you calling it skipping?

**Kiffin: Well, what is it?**

Rollins: I took a mental break.

**Kiffin: OK, Hey Keith Carter I'm not going to show up to work the next two weeks, oh you want to meet with me, no, I'm not going to meet with you. (Slams Phone) Fired!**

Rollins: I mean your acting like my issues aren't real.

**Kiffin: I didn't say they're not real.**

**Kiffin: OK, I didn't say they are not real, you show up when your head-when your boss wants to meet with you, and I mean- mean it wouldn't have been like this, it would've been like ok, If you would've come here, when you kept getting messages the head coach wants to talk to young you say I'm not ready to talk to** him

Rollins: I wasn't.

**Kiffin: (Screaming) Well what f\*\*\*ing world do you live in?**

Rollins: I don't see why you have to be disrespectful honestly.

**Kiffin: Get out of here go go, you're off the team you're done see ya… see ya**

Rollins: Cause I?

**Kiffin: See ya, Go, go, and guess what, we can kick you off the team, so go read your f\*\*\*ing rights about mental health, we can kick you off the team, for not showing up, when the head coach asks to meet with you and you don't show up for weeks, ok, we can remove you from the team.**

Rollins: Alright

**Kiffin: It's called being a p\*\*\*y, it's called hiding behind s\*\*t, and not showing up to work, you show up when your boss-so when you have a real job ok, someday, and your boss says hey come in and meet, I advise you to go meet with him, and not say no, I'm not ready to meet with my boss, maybe a few weeks from now.**

Rollins: Got it.

86.     Kiffin kicked Rollins off the football team because he requested to take a mental

14

health break due to the anxiety, depression, and mental stress he was suffering.

87. Rollins went to Nicholson for a consultation after his follow-up meeting with Kiffin.

88. Rollins was feeling very demoralized and sad because Kiffin had maliciously inflicted mental and emotional distress on him and kicked him off the football team.

89. Nicholson had encouraged Rollins to meet with Kiffin even after Rollins had informed her about Kiffin's malicious intentional verbal assault and infliction of emotional distress on him during their February 27, 2023 meeting.

90. Nicholson was a supervisor for Kiffin, but she failed to take any corrective action concerning Kiffin's malicious intentional verbal assault and infliction of emotional distress on Rollins after his (Kiffin's) February 27, 2023 meeting with Rollins.

91. The environment when Rollins met with Kiffin on February 27, 2023 and March 21, 2023 was hostile to Rollins.

92. Kiffin has never kicked a white football player off the team for requesting or taking a break.

93. Kiffin has allowed a white football player who had been removed from the team to return to the team.

94. Nicholson knew the environment was hostile to Rollins when he met with Kiffin on February 27, 2023.

95. Rollins told Nicholson during his February 28, 2023 consultation with her that the

15

environment was hostile when he met with Kiffin the previous day.

96.     Nicholson knowingly sent Rollins back into a hostile environment in March 2023 to meet with Kiffin alone without taking any disciplinary or corrective action against Kiffin.

97.     Female volleyball players at the UM were allowed to take a mental break to deal with mental issues without being kicked off the volleyball team prior to and during the period of time that Rollins was kicked off the football team for taking a mental break.

98.     White female softball players at the UM were allowed to take a 14-day mental break to deal with mental issues without being kicked off the softball team prior to and during the period of time that Rollins was kicked off the football team for taking a mental break.

99.     Rollins, an African-American male at the UM, was subjected to a hostile educational environment for requesting and taking a mental break.

100.    White female athletes at the UM have not been subjected to a hostile educational environment for requesting and taking a mental break.

101.    All of the actions and inactions of Kiffin complained of herein were taken in his individual capacity and in his capacity as an employee of the UM acting within the course and scope of his employment.

102.    All of the actions and inactions of Kiffin complained of herein were intentional, deliberate, malicious, grossly negligent, negligent, and taken in reckless disregard for the rights and mental health of Rollins.

103.    All of the actions and inactions of Joyner, Savage, other members of the coaching

16

staff and trainer staff, and Nicholson complained of herein were taken in their capacities as employees of the UM acting within the course and scope of their employment.

104.    All of the actions and inactions of Joyner, Savage, other members of the coaching staff and trainer staff, and Nicholson complained of herein were grossly negligent, negligent, and taken in reckless disregard for the rights and mental health of Rollins.

105.    As a proximate result of the actions and inactions of the defendants, as mentioned above, jointly and severally, Rollins has suffered migraine headaches, heart palpitations, Rollins suffered severe depression, anxiety, frustration, embarrassment, humiliation, a loss of sleep, and loss of appetite.

106.    As a proximate result of the actions and inactions of the defendants, as mentioned above, jointly and severally, Rollins has suffered physical pain and emotional distress and anguish.

## EXHAUSTION OF REMEDIES

107.    Rollins timely submitted a tort claims demand letter, pursuant to Miss. Code Ann. §11-46-1, *et seq.*, to the defendants on May 3, 2023.  A true and correct copy of the demand letter is attached hereto as Exhibit "A" and incorporated herein.

108.    More than 95 days have expired since the tort claims demand letter was submitted to the defendants, and they have not responded to the demand letter.

## CAUSES OF ACTION

## COUNT I - DENIAL OF EQUAL PROTECTION (14th Amend. U. S. Constitution)

109.     The actions and inactions of the defendant, Kiffin, in intentionally taking adverse action against Rollins, an African American athlete, on account of race, for requesting and taking a mental health break, but not taking adverse action against white student-athletes for requesting and taking a mental health break constitutes unlawful racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

110.     The actions and inactions of the defendant, Kiffin, in intentionally subjecting Rollins, an African American athlete, on account of race, to a hostile educational environment for requesting and taking a mental health break, but not subjecting white student-athletes to a hostile educational environment for requesting and taking a mental break constitutes unlawful racial discrimination in violation of  the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

111.     The actions and inactions of the defendant, Kiffin, in intentionally taking adverse action against Rollins, a male athlete, on account of sex, for requesting and taking a mental health break, but not taking adverse action against white student-athletes for requesting and taking a mental health break constitutes unlawful sexual discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

112.     The actions and inactions of the defendant, Kiffin, in intentionally subjecting Rollins, a male athlete, on account of sex, to a hostile educational environment for requesting and taking a mental health break, but not subjecting white student-athletes to a hostile educational environment

18

for requesting and taking a mental break constitutes unlawful sexual discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

### COUNT II - TITLE VI-RACIAL DISCRIMINATION (42 U. S. C. §§ 2000d, *et seq*.)

113.    The actions and inactions of the defendant, the UM, a university receiving federal financial assistance, in intentionally taking adverse action against Rollins, an African American athlete, on account of race, for requesting and taking a mental health break, but not taking adverse action against white student-athletes for requesting and taking a mental health break constitutes unlawful racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d, *et seq.*

114.    The actions and inactions of the defendant, the UM, a university receiving federal financial assistance, in intentionally subjecting Rollins, an African American athlete, to a hostile educational environment for requesting and taking a mental health break, on account of race, but not subjecting white student-athletes to a hostile educational environment for requesting and taking a mental health break constitutes unlawful racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d, *et seq.*

### COUNT III - TITLE IX-SEXUAL DISCRIMINATION (20 U. S. C. § 1681)

115.    The actions and inactions of the defendant, the UM, a university receiving federal financial assistance, in intentionally taking adverse action against Rollins, a male athlete, for requesting and taking a mental health break, on account of sex, but not taking adverse action against female student-athletes for requesting and taking a mental health break constitutes unlawful sexual discrimination in violation of Title IX of the Education Amendments of 1972 , 20 U. S. C. § 1681.

19

116.     The actions and inactions of the defendant, the UM, a university receiving federal financial assistance, in intentionally subjecting Rollins, a male athlete, to a hostile educational environment for requesting and taking a mental health break, on account of sex, but not subjecting female student-athletes to a hostile educational environment for requesting and taking a mental health break constitutes unlawful sexual discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d, *et seq.*

## COUNT IV - AMERICANS WITH DISABILITIES ACT (42 U. S. C. § 12102 & 12132)

117.     Rollins suffers from a mental impairment that substantially limits one or more of his major life activities with a duration of greater than six (6) months.

118.     Rollins is qualified to play football for the UM.

119.     The UM and Kiffin perceived Rollins as having a mental impairment with a duration of greater than six (6) months that substantially limited one or more of his major life activities.

120.     Rollins, at all times relevant herein, was disabled within the meaning of the Americans with Disabilities Act, 42 U. S. C. §§ 12102 and 12132, was qualified to play football for the UM, but he was kicked off the football team by Kiffin because of his disability.

121.     The actions and inactions of the defendants, the UM, a university receiving federal financial assistance, and Kiffin, in kicking Rollins off the UM football team because of his disability or a perceived disability constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U. S. C. §§ 12102 and 12132.

122.     The actions and inactions of the defendant, the UM, a university receiving federal

financial assistance, in subjecting Rollins to discrimination because of his disability or a perceived disability constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U. S. C. §§ 12102 and 12132.

### COUNT V - § 504 OF THE REHABILITATION ACT (29 U. S. C. § 794)

123.    The actions and inactions of the defendant, the UM, a university receiving federal financial assistance, in discriminating against Rollins because of his disability or a perceived disability constitutes unlawful disability discrimination in violation of § 504 of the Rehabilitation Act of 1973, 29 U. S. C. § 794.

### COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (state law)

124.    The actions and words of Kiffin toward Rollins at their February 27, 2023 meeting and March 21, 2023 meeting were malicious, intentional, willful, wanton, grossly reckless, and indifferent to the health and well being of Rolllins.

125.    The actions and inactions of the defendant, Kiffin, constitutes an intentional infliction of emotional distress on Rollins that was malicious because:

    a.    Kiffin acted wilfully, maliciously, recklessly, and wantonly in words and deeds toward Rollins, as set out above;

    b.    Kiffin's words and actions evoke outrage and revulsion in civilized society;

    c.    Kiffin's acts and words were intended to cause harm to Rollins;

    d.    Rollins suffered severe emotional distress as a direct result of Kiffin's words

21

and actions; and

e.     such resulting emotional distress was foreseeable from the intentional acts and words of Kiffin.

## COUNT VII - GROSS NEGLIGENCE (state law)

126.    The reckless, wanton, and gross actions, words, and inactions of the defendants, jointly and severally, as set out above, in disregarding the rights and health of Rollins by breaching the duty they owed him proximately causing him to suffer physical pain and emotional injury and damages constitute gross negligence.

## COUNT VIII - NEGLIGENCE (state law)

127.    The actions, words, and inactions of the defendants, jointly and severally, as set out above, by breaching the duty they owed Rollins which proximately caused him to suffer physical pain and emotional injury and damages constitute negligence.

## CAUSATION, INJURY, AND DAMAGES

128.    As a proximate results of the actions and inactions of the defendants, jointly and severally, as mentioned above, the plaintiff has suffered physical pain, emotional distress, embarrassment and humiliation, and the plaintiff has incurred medical bills, court costs, and attorney fees.

129.    As a proximate results of the actions and inactions of the defendants, jointly and severally, as mentioned above, the plaintiff has suffered compensatory damages in the amount of $10,000.000.00.

130.    As a proximate results of the actions and inactions of Kiffin, plaintiff seeks punitive damages against him in the amount of $30,000,000.00.

## EQUITABLE RELIEF

131.    Pursuant to 28 U. S. C. §§ 2201 and 2202, Rollins seeks a declaratory judgment that the actions, words, and inactions of the defendants, jointly and severally, as mentioned herein, constitute a violation of 42 U. S. C. § 2000d, *et seq.* (Title VI of the Civil Rights Act of 1964), 20 U. S. C. § 1681 (Title IX of the Education Amendments of 1972 ); 29 U. S. C. § 794 ( § 504 of the Rehabilitation Act of 1973), 42 U. S. C. §§ 12102 and 12132 (the Americans with Disability Act of 1990).

132.    Pursuant to Fed. R. Civ. P. 65, Rollins seeks a temporary restraining order, preliminary injunction, and permanent injunction re-instating him to the UM football team on the defensive line and requiring the defendants to provide educational material on mental health to all athletes.

## JURY DEMANDED

133.    Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

**WHEREFORE**, **PREMISES CONSIDERED**, plaintiff demands judgment and equitable relief of and from the defendants as follows:

a.    Plaintiff requests a declaratory judgment that the actions, words, and inactions of the defendants, jointly and severally, as mentioned herein, constitute a violation of 42 U. S. C. § 2000d, *et seq.* (Title VI of the Civil Rights Act of 1964), 20 U. S. C. § 1681 (Title IX of the Education

Amendments of 1972 ); 29 U. S. C. § 794 ( § 504 of the Rehabilitation Act of 1973), 42 U. S. C. §§ 12102 and 12132 (the Americans with Disability Act of 1990).

b.      Plaintiff requests a temporary restraining order, preliminary injunction, and permanent injunction re-instating him to the UM football team on the defensive line  and requiring the defendants to provide educational material on mental health to all athletes.

c.      Plaintiff demands a judgment of compensatory damages against the defendants, the UM and Kiffin, in the amount of $10,000,000.00.

d.      Plaintiff demands a judgment of punitive damages against Kiffin in the amount of $30,000,000.00.

e.      Plaintiff demands an award of court costs, including a reasonable attorney's fee.

f.      And, plaintiff demands general relief.

This the 14th day of September, 2023.

> Respectfully submitted,
> DeSANTO ROLLINS,
> PLAINTIFF
>
> */s/ Carroll Rhodes*
> CARROLL RHODES, ESQ. - MSB # 5314
> LAW OFFICES OF CARROLL RHODES
> POST OFFICE BOX 588
> HAZLEHURST, MISSISSIPPI 39083
> TELEPHONE: (601) 894-4323
> FACSIMILE: (601)894-1464
> E-MAIL: crhode@bellsouth.net

24