IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DESANTO ROLLINS**                                                                  **PLAINTIFF**

**v.**                                                           **No. 3:23-cv-00356-MPM-RP**

**LANE KIFFIN, et al.**                                               **DEFENDANTS**

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss [14] under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The plaintiff's response in opposition [18] necessitated the conversion of the motion into one for summary judgment, to which neither party objected. This Court, therefore, considered all the submissions and memoranda of the parties and is now prepared to rule.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

In late February 2023, DeSanto Rollins was summoned to a meeting with his head coach, Lane Kiffin. Rollins had been a member of the University of Mississippi ("the University") football team since 2020 but had recently experienced some setbacks. In the months leading up to the events at issue, he sustained several injuries and was struggling with residual effects – both mental and physical. He also felt pressured by his defensive line coach to enter the transfer portal, which left him feeling "undervalued, depressed, deflated, hopeless, and anxious." [18-1] at 5. And, most importantly, he had suffered the loss of his beloved grandmother in January. With this backdrop, Rollins went to meet with Kiffin, as requested.

In the conference, Kiffin informed Rollins that he was being moved from the defensive tackle position to the scout team on the offensive line. Rollins alleges that when he questioned

1

Kiffin's decision, the coach responded by yelling at him and saying that he should have transferred. Rollins then informed Kiffin that he needed to take a mental health break from football. According to Rollins, this announcement had little impact on Kiffin, who continued to yell until Rollins left.

As soon as the meeting ended, Rollins and his mother contacted other members of the coaching staff to inform them that he needed to take a mental health break. In response, the head trainer arranged a counseling session for the following day with the University's sports psychologist, Dr. Josie Nicholson, who encouraged Rollins to take a mental health break. Over the next week, the plaintiff attended sessions with both Nicholson and a private counselor unconnected with the University. During this time, members of the coaching staff reached out to Rollins, expressing their concern and support.[1] They also repeatedly asked that he meet with Kiffin.[2] Rollins declined each request because he did not yet feel up to it. In late March, Rollins felt able to speak with Kiffin and agreed to a meeting.

On March 21, Rollins met with Kiffin at 8:00 am and recorded the meeting.[3] Kiffin was upset that Rollins had not returned his calls or agreed to see him. Rollins informed him it was due to a mental health break. Kiffin, raising his voice and using obscenities, berated Rollins for his lack of communication. Finally, Kiffin told Rollins to "[g]et out of here" because he was "off the team you're done." Audio recording: Conversation Between Lane Kiffin and DeSanto Rollins, at 02:29 (March 21, 2023). When he tried to respond, Kiffin cut Rollins off saying, "Go, go. And guess what? We can kick you off the team, so go read your f***ing rights about mental health. We

---

[1] For example, Strength Coach Nick Savage said, "Thinking about you!! Praying for you and hope all is well!! Call if you need anything please." [25-1] at 18. Defensive Line Coach Randall Joyner said, "Just checking in on you. Praying for you. Let me know if I can help." *Id.* at 14.

[2] On March 1, Joyner said, "Hey. Coach Kiffin wants to meet with you again. What time can you?" [25-1] at 7. Head Football Trainer, Pat Jernigan, said, "Coach brought up a couple of days ago having a follow up meeting with you – have you done that yet or are you in a place to do that if you haven't yet?" *Id.* at 17.

[3] Because a transcription of the recording was included in the Complaint [1], the Plaintiff's Response to Defendants' Motion to Dismiss [18], and the Declaration of DeSanto Rollins [18-1], there is no need to repeat it in its entirety here.

can kick you off the team for not showing up when the head coach asks to meet with you, and you don't show up for weeks."[4] *Id.* at 02:34.

Shortly after leaving the meeting, Rollins received a text from Kiffin at 8:15 am that explained, "To be clear you are not losing your scholarship in any way . . . I tried to follow you out to re-meet with you." [25-1] at 24. At the same time, Coach Savage texted Rollins saying, "I know you just broke a meeting with the head coach and he wants to meet with you again real quick." *Id.* at 25. After no response, Savage sent another text saying, "Just let me know you are ok." Rollins responded, "Honestly I'm not coach sorry." *Id.*

After receiving no response from Rollins, Kiffin again texted the plaintiff on March 24th regarding his position saying, "Ok since you continue to never respond to any of my calls or texts just take as long as you want/need to do whatever you want to do. We will support you whatever you want to do." [25-1] at 35. Rollins responded to this message with the following: "I'm sorry I cannot respond directly to you any more. Please direct all questions and concerns to: Attorney Carroll Rhodes." *Id.* Four days later, Kiffin again reached out to the plaintiff via email, which read:

> DeSanto, I wanted to send you a follow up email concerning your status with the Ole Miss Football Team. Your current scholarship agreement has not changed. As I have stated in previous text messages, I want you to focus on your well-being. While you are away from team activities, you will continue to receive academic support through the Fed Ex Academic Support Center, health-related services through Ole Miss Health & Sports Performance, as well as access to sports psychology services. When you are ready to return, please contact Josie Nicholson, Ph.D. . . .to work with you on the transition back into team activities.

[24-2] at 1. This time, the plaintiff's attorney responded: "On Friday, March 24, 2023 Mr. Rollins informed you and other Athletic Department personnel that all further communications should be

---

[4] Forgive us for observing that there was a time in Oxford when language of nobler import was admired at the University – words which encouraged young men facing crises to "endure by lifting his heart, by reminding him of the courage and honor and hope and pride and compassion and pity and sacrifice which have been the glory of his past." William Faulkner, Nobel Prize Banquet Speech (Dec. 10, 1950), https://www.nobelprize.org/prizes/literature/1949/faulkner/speech/. Such virtues are not to be found in the matter *sub judice*. Sadly, the law does not require orators to display such verities of the heart and, thus, we find ourselves where we are today.

with his attorney. . . I request that you cease all direct communications with Mr. Rollins and direct all future communications to me." [24-3] at 1.

In preparation for the fall semester, the Associate General Counsel for the University, Ane Debro, scheduled a meeting with Rollins's attorney in early August to discuss the plaintiff's return to campus. After their conversation, Debro sent an email reiterating that Rollins had access to "any general university facilities or services available to all University of Mississippi students" and that they could "discuss how to proceed with his acclimation back to team activities once he is released from his physician's care." [24-4] at 1. A month later, Rollins filed suit.

Rollins brings claims against Kiffin and the University alleging, *inter alia*, that he was kicked off the team because he requested a mental health break, which violated various anti-discrimination statutes. The defendants responded with a Motion to Dismiss [14] in which their chief argument was that "Plaintiff was not kicked off the team – he remains on the team, with his football scholarship, to this day." [15] at 2. In support, the defendants provided a link to the University's official team roster which, indeed, lists Rollins as a member.

The plaintiff's response in opposition to the motion conceded that Rollins is on the official roster but, for the first time, insisted that it was in name only. As evidence of this, the plaintiff submitted the Declaration of DeSanto Rollins, which averred that the plaintiff had not been invited to participate in team activities since the March 21 meeting. The affidavit, if considered by the court in deciding the motion, would require conversion of this matter into one for summary judgment under Rule 56.[5] In light of this anticipated conversion, Rollins filed a motion to

---

[5] If evidence outside of the pleadings is presented to the court and used in deciding a motion to dismiss, the matter must be converted to a motion for summary judgment. Fed. R. Civ. P. 12(d). When such a conversion takes place, the plaintiff must be provided with a reasonable opportunity to present all pertinent materials. Here, Rollins had notice of the potential conversion because he specifically asked that the defendants' motion "be evaluated under Rule 12(b)(6)'s legal standard or Rule 56's legal standard." [19] at 3.

4

supplement [25] to include "the fuller e-mail and text message record." [25] at 2. There being no objection, this Court will consider all the submissions, including those filed with Plaintiff's Motion to Supplement the Record, and must, therefore, convert this motion into one for summary judgment under Rule 56.

## LEGAL STANDARDS

### A. Rule 12(b)(1) Motion to Dismiss

The defendants raise Eleventh Amendment sovereign immunity as to some claims, thus questioning this Court's subject-matter jurisdiction under Rule 12(b)(1). The party seeking the forum bears the burden of proving that jurisdiction exists. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). In assessing whether there is jurisdiction, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (citation omitted).

### B. Summary Judgment Standard

Summary judgment is proper when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if its resolution might affect the outcome of the suit. *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could find for the nonmoving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Factual controversies are resolved in favor of the nonmoving party, "but only when

5

there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Johnson v. Cooper T. Smith Stevedoring Co.*, 74 F.4th 268, 275 (5th Cir. 2023). When opposing parties present two versions of the story, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on [the] motion." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Raising "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence" is not enough to demonstrate that a genuine issue exists. *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

## **DISCUSSION**

According to his memorandum opposing dismissal,[6] the plaintiff brings four federal claims against the University and Kiffin in his official capacity: (1) "racial discrimination in violation of Title VI;" (2) "sexual discrimination in violation of Title IX;" (3) "discrimination because of a disability or a perceived disability in violation of the Americans with Disabilities Act ("ADA"); and" (4) "discrimination because of a disability or perceived disability in violation of § 504 of the Rehabilitation Act." [19] at 12. Rollins also brings a federal "equal protection claim against Kiffin, in his individual capacity, for discriminating against him on account of race and sex and subjecting him to a hostile educational environment on account of race and sex." *Id.* at 16. Rollins brings two state law claims against the University and Kiffin in his official capacity: (1) gross negligence; and (2) negligence. Finally, Rollins asserts a state law intentional infliction of emotional distress claim against Kiffin individually. *Id.* at 12.

---

[6] The plaintiff says the claims stated in his response were the claims he brought in the complaint, but they are substantially different. When a claim is raised for the first time in a response to a motion for summary judgment, it is not properly before the court and, therefore, may be disregarded. *Green v. JP Morgan Chase Bank, NA*, 562 F. App'x 238, 240 (5th Cir. 2014). In the interest of judicial economy, however, this Court will address the plaintiff's allegations as "clarified" in his response because they do not change the outcome and, therefore, amending the complaint to include them would be futile.

### A. Eleventh Amendment Immunity

The defendants argue that the Eleventh Amendment bars Rollins's ADA and negligence claims against both the University and Kiffin. If the defendants are entitled to sovereign immunity, it would deprive this Court of jurisdiction as to these claims and, therefore, must be addressed before other challenges.

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because an official capacity claim is "a suit against the official's office," it is "no different from a suit against the State itself." *Id.* at 71.

As a result of this immunity, federal courts lack jurisdiction over suits against a state, state agency, or state official in his or her official capacity "unless that state has waived sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). Additionally, a third exception under *Ex parte Young* allows suit against a state official acting in his official capacity "as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). In determining whether the *Ex parte Young* exception applies, the district court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

#### 1. ADA Claims

Rollins alleges that, in kicking him off the team, the defendants engaged in unlawful disability discrimination in violation of the Americans with Disabilities Act. Because the Fifth

7

Circuit has consistently held that state universities qualify as arms of the state,[7] both the University and Kiffin in his official capacity enjoy sovereign immunity, which they have not waived. Thus, this Court will only have jurisdiction if Congress has validly abrogated the defendants' immunity.

The abrogation inquiry requires examining: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Luke v. Texas*, 46 F.4th 301, 305 (5th Cir. 2022). Accordingly, this Court must first determine whether Rollins alleged a violation of Title II.

In order to state a claim under Title II of the ADA "in the context of a student excluded from an educational program," the plaintiff must allege that: "(1) he has a qualifying disability; (2) he is otherwise qualified to participate in the defendant's program; and (3) he was excluded from the program on the basis of his disability." *Maples v. Univ. of Tex. Med. Branch*, 901 F. Supp. 2d 874, 878 (S.D. Tex. 2012), *aff'd* 524 F. App'x 93 (5th Cir. 2013). "Otherwise qualified" means that the plaintiff must meet all essential requirements applicable to all persons, with or without the aid of reasonable accommodations. *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 220 (5th Cir. 2018). Defendants argue that even if Rollins was removed from the team, which they dispute, he still failed to allege a Title II violation because he did not fulfill the University's essential requirements to return. This Court agrees.

In his motion to supplement, the plaintiff concedes that the only thing keeping him from returning to team activities was a medical release: "The fuller e-mail and text message record show that the university kept Rollins from participating in team events until he was released by his

---

[7] *See McNair v. Mississippi*, 43 F. Supp. 3d 679, 686-87 (N.D. Miss. 2014) (collecting cases).

mental health provider." [26] at 3. But the plaintiff gives no indication that he complied with this request. Nor does he allege that he was singled out and, therefore, the requirement was not "applicable to all persons." To the contrary, the record suggests that the request for medical clearance was consistent with the University's requirements for any player returning from leave. Indeed, the plaintiff's declaration states that after he suffered a concussion during a game, "[t]he medical staff cleared me in two weeks," indicating that he has complied with medical certification requirements in the past. [18-1] at 3. Yet, Rollins has offered no evidence that he was medically cleared to return or that he made any effort whatsoever to resume team activities after the March 21 meeting. Consequently, the evidence shows that it was up to Rollins when or if he resumed team activities – the decision was entirely his own.

Since the plaintiff's own pleadings demonstrate that the only reason he was not allowed to resume team activities was due to his failure to obtain a medical release, he cannot make a plausible showing that he was otherwise qualified. *See*, *Shurb v. Univ. of Tex. Health Sci. Ctr.*, 63 F. Supp. 3d 700, 708 (S.D. Tex. 2014) (finding "no evidence that the plaintiff was otherwise qualified to participate" in med school program because he failed to provide medical release); *Williams v. City of Richardson*, No. 3:16-cv-2944, 2017 WL 4404461, at *5 (N.D. Tex. Sept. 8, 2017) ("[T]he city's refusal to permit Plaintiff to return to work . . . pending receipt of a full medical release is not an adverse employment action."). Consequently, Rollins has failed to allege a Title II violation, and the defendants are entitled to immunity. The plaintiff's ADA claims are dismissed without prejudice.[8]

    2.    *Negligence Claims*

Rollins brings negligence and gross negligence claims against the University and Kiffin in

---

[8] Fifth Circuit precedent "make[s] clear that a jurisdictional dismissal must be without prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citing *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020)).

his official capacity. The defendants argue that they are immune from these claims because the Mississippi Tort Claims Act ("MTCA"), the exclusive state remedy in this case, preserves sovereign immunity. The plaintiff failed to respond to their assertion and, thus, he has waived any such argument. *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701 (5th Cir. 2004) (finding that plaintiff waived his argument on appeal by failing to raise it). Had he responded, though, the result would be the same.

The MTCA is "the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006). When it promulgated the MTCA, Mississippi "explicitly preserved its sovereign immunity as to federal litigation." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020). Accordingly, the defendants "cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception." *Id.* at 275. Thus, the defendants are entitled to sovereign immunity, and the plaintiff's negligence and gross negligence claims are dismissed without prejudice.

### B. Equal Protection

Rollins claims that Kiffin, by removing him from the football team, subjected him to impermissible race and sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. The defendants argue that the plaintiff has not alleged that the defendants violated a clearly established constitutional right and, thus, Kiffin is entitled to qualified immunity.

Once qualified immunity is invoked, the burden shifts to the plaintiff to prove show that the defense is unavailable. *Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010). The qualified immunity inquiry involves determining: (1) "whether the plaintiff has alleged a violation of a constitutional right"; and (2) "whether the right at issue was clearly established." *Rice v. ReliaStar*

*Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim under the Equal Protection Clause, the plaintiff must demonstrate that (1) he "received treatment different from that received by similarly situated individuals"; and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

As to the first prong, "'[s]imilarly situated' means 'in all relevant respects alike,'" and determining whether comparators meet this criterion requires consideration of "the full variety of factors that an objectively reasonable decisionmaker would have found relevant." *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022) (citations omitted).

For the second prong, showing disproportionate impact alone is not enough; the plaintiff must prove that the defendants acted with a "discriminatory purpose." *Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 854-55 (5th Cir. 2010). To establish discriminatory intent or purpose, the plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected [its] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennell*, 804 F.3d at 412.

Here, the plaintiff argues that he has sufficiently alleged that Kiffin treated him differently than white and female athletes. Even assuming that the comparators alleged by Rollins meet the "substantially similar" requirement, which this Court doubts,[9] his claim still fails because he made no showing of discriminatory intent. As correctly noted by the defendants, "Plaintiff's response

---

[9] Rollins alleges that Kiffin "allowed at least two white football players to take a break and come back to the team." [19] at 17. As already discussed, the plaintiff was able to return to the team at any time by submitting a medical release. Therefore, even assuming these white players were similarly situated, Rollins received the same treatment. There are also issues with the plaintiff's alleged female comparators because, as head coach of the football team, Kiffin was not involved in volleyball players' requests for leave. The choices of two different decisionmakers "are rarely similarly situated in relevant ways for establishing a prima facie case." *Goulet v. Univ. of Miss.*, No. 3:22-cv-00089, 2023 WL 4707134, at *2 (N.D. Miss. July 24, 2023)

11

brief is silent" on the issue of discriminatory intent. The plaintiff alleges "that Kiffin intentionally treated him differently from white players who requested time off and female athletes who requested a mental health break," but he does not substantiate this further. Because disparate treatment is not enough, these assertions alone do not establish that the intentional treatment was motivated by gender or racially-based discriminatory intent. Nor does Rollins attempt to explain how any of these contentions support a plausible claim that defendants were so motivated. There is no allegation of derogatory language, for example, or any indication that Kiffin selected his course of action "for the purpose of causing adverse effect on an identifiable group." *Fennell*, 804 F.3d at 412. Rollins has, therefore, failed to allege the violation of a constitutional right. Because Rollins has not alleged any facts that make it plausible that Kiffin's actions were motivated by a discriminatory intent, he has not alleged the violation of a constitutional right and, therefore, has not overcome the defense of qualified immunity.

The plaintiff's remaining equal protection claim alleges that Kiffin subjected him to a hostile educational environment. This fails for the same reasons. The plaintiff cites *Sewell v. Monroe City Sch. Bd.*, which found that "[i]ntense verbal abuse that comes from an authority figure—like a school administrator—and persists for most of the school year can constitute a hostile educational environment." 974 F.3d 577, 585 (5th Cir. 2020). That may be true, but two isolated incidents within 30 days cannot be likened to the verbal ridicule Sewell faced "every other day for much of the school year." *Id.* Furthermore, as noted by the defendants, "[w]here the conduct at issue consists solely of speech, there is no equal protection violation." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999). Therefore, the plaintiff's hostile educational environment claim also fails. Accordingly, the plaintiff's equal protection claims are dismissed

12

with prejudice.[10]

### C. Title VI and Title IX

The plaintiff brings Title VI and Title IX claims against the defendants for racial and gender discrimination. Defendants first argue that these claims fail for the same reasons as his Equal Protection claim. Indeed, to prevail on either a Title VI or Title IX claim, a plaintiff must show discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) ("[A] Title VI plaintiff must prove discriminatory intent."); *Poloceno v. Dall. Indep. Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020) ("A plaintiff's Title IX claim must be based on intentional discrimination, not disparate impact."). Thus, these claims fail for the same reasons as the plaintiff's equal protection claim.

The defendants also argue that even if Rollins had made the requisite showing of intentional discrimination, the plaintiff's claims would still fail because he may not seek reputational or emotional distress damages for claims under Title VI, Title IX, or the Rehabilitation Act.[11] In his response, the plaintiff concedes that emotional damages are not recoverable under § 504 of the Rehabilitation Act but, persisting in error, he contends that emotional distress damages are still available under Title IX and Title VI because the University is a recipient of federal funding. [19] at 24. This is not so.

In *Cummings v. Premier Rehab Keller, PLLC*, the Supreme Court clarified that reputational and emotional distress damages are not recoverable under the Rehabilitation Act and the Affordable Care Act. 596 U.S. 212, 230 (2022). Though the Court only addressed these two statutes directly, it noted that they are two of the four antidiscrimination statutes "prohibiting

---

[10] To the extent that Rollins intended to assert an equal protection claim against Kiffin in his official capacity, as he claimed to do only in a footnote, this would also fail because the Supreme Court has held that state officers in their official capacity cannot be sued under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67-71 (1989).

[11] The plaintiff's claims under § 504 of the Rehabilitation Act are addressed in the following section.

13

recipients of federal financial assistance from discriminating based on certain protected grounds." *Id.* at 217-18. The other two, the Court stated, are Title VI and Title IX. *Id.*

Though *Cummings* did not concern Titles VI and IX directly, "nearly every court to consider the issue has concluded" that it still applies to them. *Van Overdam v. Texas A&M Univ.*, No. 4:18-cv-02011, 2024 WL 115229, at *2 (S.D. Tex. Jan. 10, 2024). This is because the *Cummings* court found that "the only remedies available for claims prosecuted as implied-right-of-action cases arising from federal spending clause legislation are those traditionally available in ordinary contract actions," and damages for emotional injuries are not available in such cases. *Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-cv-00031, 2023 WL 6130548, at *4 (S.D. Tex. Sept. 19, 2023). Because "[i]t is beyond dispute" that Title IX and Title VI are such spending clause legislations, the only remedies available are those described in *Cummings*. *Id.*

Here, the plaintiff claims he is entitled to damages for "physical pain, emotional distress, embarrassment and humiliation." [1] at 22. Therefore, he has only alleged facts giving rise to reputational and emotional distress damages, which are unavailable per *Cummings*. Additionally, the plaintiff argues that even if *Cummings* bars emotional damages, it does not bar prospective relief, which he has alleged. It is true that claims for injunctive relief are allowable under these antidiscrimination statutes. The plaintiff seeks injunctive relief, however, in the form of reinstatement to the football team[12] and dissemination of educational material on mental health to athletes. As discussed above, the plaintiff may return to the team at any time by providing a release from his mental health provider. Furthermore, the plaintiff cites no authority–and this Court is unfamiliar with any–identifying a legal duty to provide these "written institutional procedures for

---

[12] The plaintiff specifically requested reinstatement to the "UM football team on the defensive line." [1] at 24. Universities pay head coaches exorbitant amounts of money for their supposed expertise on this subject. Such a determination is, quite literally, above this Court's pay grade.

14

routine mental health referrals" to student-athletes.[13] Therefore, the plaintiff has not stated a plausible claim for injunctive relief.

Because Rollins only seeks unrecoverable damages under these statutes, his Title VI and Title IX claims against the defendants must be dismissed in their entirety.

### D. Rehabilitation Act

Rollins alleges that defendants discriminated against him due to his disability in violation of § 504 of the Rehabilitation Act. As with his ADA claim, Rollins brings this claim against the University and Kiffin in his official capacity.

The ADA and the Rehabilitation Act both prohibit discrimination against qualified individuals with disabilities. The two provisions employ many of "the same legal standards, and the same remedies are available under both." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Therefore, "jurisprudence interpreting either section is applicable to both." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Importantly, the Rehabilitation Act also requires that the plaintiff prove he was otherwise qualified to participate in the program. *Id.*

As previously demonstrated, the plaintiff failed to establish that he was otherwise qualified to participate because he did not comply with the necessary requirements for returning to the team. For the same reasons, the plaintiff's claims under § 504 also fail. Additionally, as discussed above, the plaintiff is not able to recover reputational or emotional distress damages under the Rehabilitation Act. Therefore, the plaintiff's § 504 claims are dismissed with prejudice.

---

[13] In fact, the record indicates that players have adequate information regarding which mental health services are available to them. The plaintiff knew to request a mental health referral, and the coaching staff ensured that he was seen by the sports psychologist the very next day. Interestingly, the coaches were ahead of the plaintiff on this issue. Shortly following receipt of the demand letter spawned by the Kiffin-Rollins contretemps, the entire football staff became Mental Health First Aid certified, for which the team was recognized as the first in Division I football to do so. *See* Michael Katz, *Entire Ole Miss Football Coaching Staff Receives Mental Health First Aid Certification*, Dispatch (June 25, 2023), https://cdispatch.com/sports/entire-ole-miss-football-coaching-staff-receives-mental-health-first-aid-certification/.

E. **Intentional Infliction of Emotional Distress**

Finally, Rollins brings an intentional infliction of emotional distress ("IIED") claim against Kiffin in his individual capacity only. [19] at 12. An IIED claim under Mississippi law has five elements:

> (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are one which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Leech v. Miss. Coll.*, No. 3:21-cv-00647, 2023 WL 218975, at *7 (S.D. Miss. Jan. 17, 2023) (quoting *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170 (Miss. Ct. App. 2021)). Establishing an IIED claim in Mississippi is a "tall order" that "requires proof of conduct so 'wanton and wilful [that] it would evoke outrage or revulsion.'" *Moore v. Solar Grp.*, 311 F. App'x 722, 724 (5th Cir. 2009) (quoting *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001)).

IIED liability "does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Leech*, 2023 WL 218975, at *7 (quoting *Hays v. LaForge*, 333 So. 3d 595, 608-09 (Miss. Ct. App. 2022)). Instead, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013)).

In their motion to dismiss, the defendants argued that "[n]one of the statements alleged in the Complaint rise to the level of actionable IIED under Mississippi law." [15] at 20. The plaintiff's response made no attempt to counter the defendants' argument and provided only a formulaic recitation of the elements of an IIED claim. For example, the plaintiff stated that "Kiffin's actions evoke outrage or revulsion in civilized society," but he provided no explanation and cited no case

16

law to support his assertion. [19] at 26. Although Kiffin's conduct in the meetings was certainly offensive and imprudent, it is more akin to immature insults and indignities than to behavior going "beyond all possible bounds of decency." The plaintiff's intentional infliction of emotional distress claim is, therefore, dismissed with prejudice.

For the reasons stated herein, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss [14], which this Court converted to a motion for summary judgment, is **GRANTED**. The plaintiff's ADA and state law negligence claims are **DISMISSED WITHOUT PREJUDICE**. The remaining claims are **DISMISSED WITH PREJUDICE**. All pending motions are **DISMISSED** as moot. A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED** this the 31st day of January, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**